UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Central States, Southeast and Southwest
Areas Health and Welfare Fund, an Employee
Welfare Benefit Plan, and Arthur H. Bunte, Jr.,
a Trustee thereof, in his representative capacity,

        Plaintiffs,

  v.

Student Assurance Services, Inc., Columbian
Life Insurance Co., and Security Life Insurance
of America,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 13-1065 ADM/FLN

___

Emily E. Gleason, Esq., and Timothy C. Reuter, Esq., Central States Funds Law Department, Rosemont, IL, and Michael D. Reif, Esq., and Richard B. Allyn, Esq., Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, MN, on behalf of Plaintiffs.

Sarah E. Crippen, Esq., and Jennifer A. Nodes, Esq., Best & Flanagan LLP, Minneapolis, MN, on behalf of Defendants.

___

## I. INTRODUCTION

On April 8, 2014, the undersigned United States District Judge heard oral argument on Defendants Student Assurance Services, Inc. ("Student Assurance"), Columbian Life Insurance Company ("Columbian Life"), and Security Life Insurance of America's ("Security Life") (together, "Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 39]. Plaintiffs Central States, Southeast and Southwest Areas Health and Welfare Fund, and Arthur H. Bunte, Jr. (together, "Central States"), oppose the motion. For the reasons set forth herein, the motion to dismiss is granted.

## II.  BACKGROUND

Central States is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA).  Am. Compl. [Docket No. 28] ("Compl.") ¶ 1.  Central States provides medical coverage for Teamsters union members and their eligible dependents.  These benefits are governed by the Central States Health and Welfare Fund Plan Document (the "Plan").  Id. ¶ 4, Ex. A.

Between 2008 and 2012, 13 children of union members covered by the Plan (the "Covered Individuals") suffered injuries while playing team sports at their respective junior high schools, high schools, and universities.  In all 13 instances, Central States paid medical benefits on behalf of the Covered Individuals in connection with the injuries.  Id. ¶¶ 30-42.  Central States paid a total of $137,204.88 on behalf of the Covered Individuals.  Id. ¶ 57.

In addition to coverage under the Plan, the Covered Individuals also had student accidental medical insurance provided by either Security Life or Columbian Life.  Id. ¶¶ 30-42.  Student Assurance, a third-party administrator based in Minnesota, processes insurance claims on behalf of Security Life and Columbian Life.  Student Assurance administered the policies insuring the Covered Individuals in this case.  Id. ¶¶ 9-10.

After paying the Covered Individuals' benefits, Central States sought reimbursement for the payments from Defendants.  Central States concluded that under the Plan's "Coordination of Benefits" section, Defendants had primary responsibility for paying the 13 student injury claims at issue.  See id. ¶ 22.  The Plan confers subrogation rights to Central States for benefits paid, and allows Central States to assert a lien for the recovery of those expenses.  Id. ¶¶ 26-28.  Applying this provision, Central States filed Notices of Liens against Student Assurance, seeking

reimbursement for the amounts Central States paid on behalf of the Covered Individuals. Id. ¶ 43. Defendants refused to reimburse Central States, concluding that the student insurance policies they provided were secondary policies meant only to provide coverage in excess of the maximum benefit amount paid by Central States. Id. ¶¶ 10, 11.

On May 7, 2013, Central States filed this action against Defendants. Central States alleges four claims: (1) declaratory judgment finding Defendants liable for present and future expenses; (2) declaratory judgment finding Defendants liable for past expenses; (3) restitution for the $137,204.88 paid to the Covered Individuals; and (4) the imposition of an equitable lien or constructive trust on Defendants in the amounts paid to the Covered Individuals. Id. ¶¶ 48-66.

This is not the first case Central States has filed regarding the coordination of benefits between insurance policies. Central States argues in its memorandum opposing dismissal that neither the United States Supreme Court nor the Eighth Circuit Court of Appeals have addressed how to coordinate benefits when an ERISA plan and a private insurance plan conflict. As a result, Central States acknowledges that it has filed six actions across the country, including this one, as part of a larger strategy to obtain judicial review.[1] Pls.' Mem. Opp'n Dismissal [Docket No. 44] ("Pls.' Opp'n") 6.

---

[1] Three district courts have already ruled against Central States and in favor of the respective defendants. See Central States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc., No. 3:11-CV-2910-D, 2012 WL 1570981 (N.D. Tex. May 4, 2012); Central States, Se. & Sw. Areas Health & Welfare Fund v. Bollinger, Inc., No. 13-2760, 2013 WL 4502083 (D.N.J. Aug. 22, 2013); Central States, Se. & Sw. Area Health & Welfare Fund v. Gerber Life Ins. Co., No. 13-cv-2994, 2013 WL 6196964 (S.D.N.Y. Nov. 26, 2013). Central States is appealing these decisions. See Pls.' Opp'n at 6 n.1. In one case, Central States, Se. & Sw. Area Health & Welfare Fund v. First Agency, Inc., 848 F. Supp. 2d 805 (W.D. Mich. 2012), the district court found in Central States' favor after reviewing the coordination of benefits provisions in the respective plans. The Michigan court did not address the equitable relief considerations discussed below.

### III.  DISCUSSION

**A.  Applicable Standard**

Defendants filed the pending motion as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In its response, Central States argues Defendants' motion is untimely because Defendants previously filed an Answer to the Amended Complaint [Docket No. 35].  See Fed. R. Civ. P. 12(b).  In their reply, Defendants argue that because they had preserved their Rule 12(b)(6) defense in their Answer, Defendants' motion could be properly considered as a motion under Rule 12(c) for judgment on the pleadings.  See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (holding distinction between Rule 12(b)(6) and Rule 12(c) to be "purely formal" when addressing lack of subject matter jurisdiction).  At oral argument, Central States conceded it would not suffer any prejudice if Defendants' Rule 12(b)(6) motion were treated as a Rule 12(c) motion.

Defendants' motion will be considered under Rule 12(c) as a motion for judgment on the pleadings.  The standard under Rule 12(c) is largely the same as for Rule 12(b)(6), that is a court must take as true "all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002) (citation omitted).  Under Rule 12(c), judgment is "appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Id.

**B.  Relief Under 29 U.S.C. § 1132**

Central States argues that under the Plan, it is entitled to reimbursement from Defendants for the payments Central States made on behalf of the Covered Individuals.  The Plan has a

Coordination of Benefits section that seeks to avoid the "duplication or overlapping" of benefits between the Plan and any "Other Plan" providing applicable coverage. Plan § 5.01. "Other Plan" is broadly defined to include any insurance coverage based on employment or group membership, among other things. Id. § 1.48. To resolve a potential overlap, the Plan states that if the applicable "Other Plan" does not have its own coordination of benefits provision, or if the Other Plan provides "specific risk coverage," then the Other Plan shall have primary responsibility for coverage. Alternatively, if either the Plan or the Other Plan provides coverage for a person other than as a dependent of a beneficiary, then that plan shall have primary responsibility for coverage. Plan §§ 5.01(a), (c). Under either of these provisions, if the Other Plan is deemed to have primary responsibility, then the Plan offers coverage only in excess of the Other Plan's maximum benefit amount. Id. § 5.02.

The Plan also provides that Central States may recover wrongly paid benefits. The Coordination of Benefits section includes a provision allowing Central States to file suit for the recovery of improperly-paid funds, or to seek a declaration against an Other Plan establishing the Other Plan as having primary responsibility for benefits payments. Id. § 5.03. In addition, the Plan confers subrogation rights to Central States for the recovery of any amounts paid on behalf of Covered Individuals. In the pursuit of such recovery, Central States "may assert a lien . . . against any person or entity." Id. §§ 11.14(a), (f).

In accordance with these provisions, Central States argues, it is entitled to recover from Defendants the payments it made on behalf of the Covered Individuals. Defendants do not dispute that Columbian Life and Security Life qualify as "Other Plans." By selling student accident insurance policies, Central States argues, Columbian Life and Security Life provided

5

duplicate or overlapping coverage. Defendants' plans offered "specific risk coverage" for student accidents, and they also provided benefits to the Covered Individuals as students, and not as dependents of their parents. As a result, Central States argues, under either §§ 5.01(a) or (c), Defendants should have primary responsibility for the Covered Individuals' benefits.

Defendants move to dismiss Central States' claims based on a limitation set forth in ERISA. In relevant part, ERISA states a civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3).

The Supreme Court has limited ERISA plan administrators to seeking only "equitable relief" as that concept was defined in the common law tradition. See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002). In Great-West, an ERISA plan administrator (hereafter "Great-West") filed suit for reimbursement from the beneficiary defendants. After a car accident, Great-West had paid medical expenses on behalf of its beneficiaries. Id. at 207-08. The beneficiaries then filed a tort action against the alleged tortfeasors and negotiated a six-figure settlement. The settlement was paid in two amounts: one amount to a special needs trust, and the other amount to the beneficiaries' attorney for further distribution among creditors. Id. at 208. A relatively small amount of the funds disbursed to the attorney were earmarked for payment to Great-West for medical expenses. Great-West refused to accept the payment, and instead sought injunctive and declaratory relief under § 1132(a)(3) to enforce its plan's reimbursement provision by requiring the beneficiaries to pay the full amount of medical

benefits.  Id.

In interpreting § 1132(a)(3), the Supreme Court held ERISA specifically limited plan administrators to "equitable relief."  ERISA, the Court held, is "a comprehensive and reticulated statute" with a detailed enforcement scheme.  Id. at 209 (citation omitted).  The use of the phrase "equitable relief" expresses Congress's intent to limit administrators to "something less than all relief."  Id. (citation omitted) (emphasis original).  A "claim for money due and owing under a contract is 'quintessentially an action at law.'"  Id. at 210 (quoting Wal-Mart Stores, Inc. v. Wells, 213 F.3d 398, 401 (7th Cir. 2000)).  Citing a dissent Justice Scalia previously wrote, the Supreme Court held:

> Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.

Id. at 210 (citing Bowen v. Massachusetts, 487 U.S. 879, 918-19 (1988)).  The Court observed that only in rare circumstances could a court of equity award "specific performance of a contract to pay money," such as to "prevent future losses that were either incalculable or would be greater than the sum awarded."  Id. at 210-11.  Apart from these rare situations, an award of money damages was typically not available in equity.  Id. at 211.  In Great-West's case, Great-West did not seek the payment of money as a means to avoid some irreparable harm; Great-West sought an injunction and declaratory relief imposing contractual liability on the defendants.  As such, despite its "equitable" label, Great-West's claim was more properly considered a legal claim for money damages.

The Supreme Court also held that claims for restitution may sound in either equity or

law, with only the former permitted under § 1132(a)(3).  Where a plaintiff cannot "assert title or right to possession of particular property," but can nevertheless show grounds for the recovery of money, the plaintiff's restitution claim sounds in law.  Great-West, 534 U.S. at 213.  Conversely, a plaintiff may seek restitution in equity "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."  Id.  Restitution in equity usually takes the form of a constructive trust or equitable lien, because the action must seek "not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  Id.  In Great-West, the Court noted that the settlement from the beneficiaries' tort lawsuit was paid in two amounts, and the beneficiaries never held either amount.  As a result, Great-West was not making a claim to particular funds that transferred into the beneficiaries' possession.  Instead, Great-West claimed it was "contractually entitled to some funds" as reimbursement for benefits paid.  Id. at 214 (emphasis original).  The intent to impose general liability on the beneficiaries meant Great-West's restitution claim sounded in law, and was thus barred by § 1132(a)(3).  Id.

Following Great-West, the Supreme Court refined the distinction between equitable recession and legal recession by further focusing on whether the plaintiff seeks the transfer of specific funds.  In Sereboff v. Mid Atlantic Med. Servs., Inc., 547 U.S. 356 (2006), another ERISA plan administrator sought reimbursement from a tort settlement for benefits it had paid on the beneficiary's behalf.  The administrator's claim in Sereboff differed from Great-West, however, because in Sereboff, the administrator sought the transfer of "specifically identifiable" funds in the "possession and control" of the beneficiaries.  Id. at 362-63.  These distinctions meant the administrator's sought-after relief could properly be characterized as "equitable."  Id.

at 363.

The Supreme Court then considered whether the basis for the administrator's claim was also equitable, and concluded it was. The Court cited a "familiar rule" stated by Justice Holmes: "a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." Id. at 363-64 (quoting Barnes v. Alexander, 232 U.S. 117, 121 (1914)). In other words, a lien may attach immediately upon the conveyance of the contracted-for property, even if the property was not initially available at the time of contracting. In Sereboff, the ERISA plan granted the administrator an interest in any funds recovered by the beneficiaries. Thus, the administrator could "follow" a portion of the tort settlement fund into the beneficiaries' hands as soon as the fund was identified, and "impose on that portion a constructive trust or equitable lien." Id. at 364 (citation omitted).

In the present case, Central States' claims against Defendants fail as a matter of law because Central States has alleged legal, not equitable, claims. Like the administrator in Great-West and unlike in Sereboff, Central States has not identified any particular funds over which it seeks recovery. In Great-West, settlement funds never passed to the beneficiaries, meaning Great-West could not equitably seek the recovery of those funds from the beneficiaries. There are no allegations here that the Covered Individuals directly obtained financial recovery for their injuries, nor are there any allegations Defendants set aside specific funds for the payment of the Covered Individuals' claims. See US Airways, Inc. v. McCutchen, 133 S. Ct. 1537, 1545 (2013) (allowing equitable recovery where beneficiary had placed settlement funds at issue in escrow). Thus, there are no specifically identifiable funds for Central States to "follow," and there is no particular property Central States should rightfully own.

Because it does not seek the payment of particular funds or assets, Central States' claims fall outside of § 1132(a)(3). In its declaratory relief claims, Central States requests the Court "declare the liability" of Defendants, and order Defendants pay $137,204.88 in accordance with the Coordination of Benefits provisions in the Plan. Compl. ¶¶ 53, 57. Looking past the word "declare," it is clear what Central States seeks is the payment of funds allegedly owed under the Plan. Similarly, Central States alleges injunctive relief claims for the recovery of "identifiable claims," "identifiable amounts," "specific amounts," and "identifiable funds." See, e.g., Pls.' Opp'n at 2; Compl. ¶¶ 11, 43. But styling the relief requested in this manner is merely applying arbitrary labels to cover the true nature of the relief sought. Central States never identifies the sought-after funds as anything more particular than "Defendants' assets." Pls.' Opp'n at 2. Central States is functionally conceding that it seeks the payment of some general portion of Defendants' assets as reimbursement under the Plan; which assets Central States receives is of no import. Central States' attempts to contrive the relief it seeks by applying equitable labels does not change the reality that it has stated only legal claims. See Great-West, 534 U.S. at 214 (holding claim that Great-West "contractually entitled to some funds" was not equitable).

Central States' argument that an equitable lien "automatically" attached to Defendants assets must also fail. See Pls.' Opp'n at 7. The Court in Sereboff distinguished between two types of equitable liens: those arising by contractual agreement, and those arising by equitable restitution. For liens by agreement, the Sereboff Court conceded that the sought-after fund "need not be in existence when the contract containing the lien is executed." Sereboff, 547 U.S. at 367. An equitable lien by agreement may attach as soon as a fund is identified; then, when the beneficiary takes possession of the fund, it does so as a constructive trustee in favor of the

administrator. See id. at 363-64. In this case, unlike in Great-West and Sereboff, Central States and Defendants are not contracting parties, meaning Defendants are not "automatically" subject to the Plan's equitable lien provisions. Cf. McCutchen, 133 S. Ct. at 1546 (holding enforcement of equitable lien meant "holding the parties to their mutual promises"). Even assuming a lien by agreement existed, or that a lien by equitable restitution applied here, Central States fails to allege a crucial step: it never identifies particular funds or property to which an equitable lien could attach. Absent such an identification, Central States may not impose an automatic equitable lien over some random or convenient portion of Defendants' assets.

Central States' argument that it need not strictly trace the amount of restitution sought is also unavailing. Courts have typically required the strict tracing of funds for liens arising under equitable restitution, but not for liens by agreement. Sereboff, 547 U.S. at 364. As noted, an equitable lien by agreement does not exist here, which suggests strict tracing requirements should apply. Even if a lien by agreement existed, however, Central States must still be able to initially identify particular funds. See id. at 362-63. Thus, while the sought-after funds may not be specifically traceable because they were later commingled, identifiable property still existed in the first instance for the administrator to identify and pursue. See,e.g., Gutta v. Standard Select Trust Ins. Plans, 530 F.3d 614, 620-21 (7th Cir. 2008). As discussed, Central States has failed to state a right to particular funds; arguing it does not need to strictly trace those funds is placing the cart before the horse.

In an attempt to identify instances where an ERISA plan administrator successfully asserted ERISA plan provisions over a third-party insurance company, Central States cites two pre-Great-West decisions. See Auto Owners Ins. Co. v. Thorn Apple Valley, Inc., 31 F.3d 371

11

(6th Cir. 1994); <u>Winstead v. Ind. Ins. Co.</u>, 855 F.2d 430 (7th Cir. 1988).  In both cases, an ERISA plan administrator and a private insurer filed cross-claims contesting whether the other insurer should have covered the beneficiary.  In <u>Winstead</u>, the Seventh Circuit Court of Appeals reviewed the conflicting coordination of benefits provisions and affirmed the district court's decision to divide liability between the two insurers on a pro rata basis.  <u>Winstead</u>, 855 F.2d at 432.  In <u>Thorn Apple</u>, the Sixth Circuit Court of Appeals rejected the "solomonic" division of liability and held in favor of the ERISA plan administrator, concluding ERISA's policy goals trumped the interests of private insurance.  <u>Thorn Apple</u>, 31 F.3d at 375.

While these decisions might have provided guidance in Central States' case at one time, both the Sixth and Seventh Circuits have acknowledged the evolution of ERISA jurisprudence reflected in <u>Great-West</u> and <u>Sereboff</u>.  In <u>Longaberger Co. v. Kolt</u>, 586 F.3d 459, 465-66 (6th Cir. 2009), the Sixth Circuit Court of Appeals applied <u>Sereboff</u> in a manner consistent with the discussion above; namely, it allowed recovery against a beneficiary's attorney because the attorney possessed specific settlement funds that could be "followed" into the attorney's hands.  <u>Id.</u> at 469.  Similarly, in <u>Gutta</u>, the Seventh Circuit acknowledged that <u>Sereboff</u> "controls our analysis."  <u>Gutta</u>, 530 F.3d at 620-21.  The Seventh Circuit affirmed judgment on the ERISA plan administrator's counterclaim only after concluding the ERISA plan granted the administrator an "equitable lien by agreement" over benefits that originally flowed to the beneficiary.  <u>Id.</u> at 621; <u>see also</u> <u>id.</u> at 620 (holding court would only have subject matter jurisdiction over ERISA counterclaim if administrator sought "equitable relief").  Based on these more recent decisions, Central States' reliance on <u>Thorn Apple</u> and <u>Winstead</u> is misplaced.

Even if <u>Thorn Apple</u> or <u>Winstead</u> remained good law, the Eighth Circuit has consistently

followed the analysis set forth by the Supreme Court. In Treasurer, Trustees of Drury Indus., Inc. Health Care Plan & Trust v. Goding, 692 F.3d 888 (8th Cir. 2012), the Eighth Circuit Court of Appeals held an ERISA plan administrator could not pursue equitable relief against a beneficiary's attorney because the attorney no longer held the settlement funds at issue, and thus the administrator was seeking legal, not equitable relief. Id. at 896-97; see also Halbach v. Great-West Life & Annuity Ins. Co., 561 F.3d 872, 883 (2009) (accord). Eighth Circuit district courts have similarly applied the holdings in Great-West and Serberoff. See, e.g., Fairview Health Servs. v. Ellerbe Becket Co. Emp. Med. Plan, No. 06-2585, 2007 WL 978089, at *6-7 (D. Minn. Mar. 28, 2007); Radtke v. Misc. Drivers Union Local #638, Health, Welfare, Eye & Dental Fund, No. 10-4175, 2011 WL 1193383, at *3-4 (D. Minn. Feb. 11, 2011), adopted by 2011 WL 1155117 (D. Minn. Mar. 29, 2011).

     As a final argument, Central States argues that it is distinct from the Great-West line of precedent because it seeks declaratory relief not only for the amounts paid to the 13 Covered Individuals at issue, but also for any future medical coverage not yet administered. Namely, Count 1 of the Complaint seeks a blanket declaration that Defendants are primarily liable for any and all "present and future medical expenses" covered by both plans. Compl. ¶ 51. This claim is too vague and hypothetical to allow relief. In a decision Central States relies on, Winstead v. J.C. Penney Co., Inc., 933 F.2d 576 (7th Cir. 1991), the parents of a child covered by two insurance plans sought payment for the child's unpaid hospital bills. Id. at 577. The father's ERISA plan and the mother's insurance company disputed which plan owed coverage, and each filed a crossclaim for a declaratory judgment finding the other responsible. Id. Unlike in that case, there is no actual controversy regarding the payment of pending insurance claims. Instead,

Central States seeks a declaratory judgment anticipating possible future disputes for unknown insurance claims filed by unidentified beneficiaries. Such a ruling goes beyond the limits of declaratory relief.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendants Student Assurance Services, Inc., Columbian Life Insurance Company, and Security Life Insurance of America's Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 39] is **GRANTED**.

2. All claims in the Amended Complaint [Docket No. 28] are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

              BY THE COURT:


                s/Ann D. Montgomery
              ANN D. MONTGOMERY
              U.S. DISTRICT JUDGE

Dated:  May 16, 2014.